**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE<br><br>    Plaintiff,<br><br>v.<br><br>AETNA BETTER HEALTH OF ILLINOIS, INC., A CVS HEALTH COMPANY, F.K.A. ILLINICARE HEALTH PLAN, INC., ON BEHALF OF ITSELF AND ITS AFFILIATES, AND DOES 1 THROUGH 25, INCLUSIVE,<br><br>    Defendants. | No. 1:21-cv-02054<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Northwestern Memorial Healthcare (Plaintiff), through its subsidiaries, provided medical care to patients who were beneficiaries of Aetna Better Health of Illinois, Inc., a CVS Health Company, F.K.A. Illinicare Health Plan, Inc. (Defendant). R. 1-1, Compl. ¶¶ 1, 11, 12.[1] Plaintiff alleges that after providing treatment to these patients, Defendant failed to pay Plaintiff the usual and customary amount for those services. *Id*. ¶¶ 15, 29. Plaintiff brings this lawsuit against Defendant asserting claims for breach of implied-in-fact contract (Count I), and in the alternative, quantum meruit (Count II). Compl. Defendant moves to dismiss the Complaint under

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. R. 13, Mot. Dismiss. For the reasons that follow, the Motion to Dismiss is denied in part and granted in part.

## Background

Plaintiff is a not-for-profit public benefit corporation organized and existing pursuant to the laws of the state of Illinois.[2] Compl. ¶ 3. Defendant is a domestic insurance company incorporated in Illinois with its principal office located in Downers Grove, Illinois. *Id*. ¶ 4. Plaintiff, through its subsidiaries, Northwestern Memorial Hospital and Central DuPage Hospital Association, provided medical treatment between April 2, 2017 and November 19, 2020 to 58 patients who were members of Defendant's health plans. *Id*. ¶ 12.

Prior to providing service to the patients, Plaintiff sought authorization for treatment from Defendant. Compl. ¶ 13. Defendant approved the medically necessary services rendered to the patients, gave Plaintiff authorization reference numbers, and approved admission of the patients. *Id*. While there was no express written contract between Defendant and Plaintiff for payment for the medical treatment rendered to the patients, Defendant did provide Plaintiff written approvals for the specified medical services for the patients. *Id*. ¶¶ 21, 25. Prior to treatment, as is industry custom and practice, Defendant "impliedly agreed, promissorily impliedly expressed and understood that" Plaintiff would provide care to the patients, submit bills for such care to Defendant, and Defendant would pay the "usual and customary value"

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

to Plaintiff for the services provided to the patients. *Id*. ¶ 22. Further, over the past five years, Plaintiff has billed multiple claims and Defendant has paid the "usual and customary value" of those claims in similar cases. *Id*. ¶ 26. Plaintiff's usual and customary charges for the medically necessary services rendered to the patients amounted to $4,928,889.82. *Id*. ¶ 15. However, after properly billing Defendant for the services provided, Defendant only paid $537,579.69, resulting in an aggregate underpayment of $4,397,310.13. *Id*. ¶ 29.

At no point in time did Defendant represent to Plaintiff that it would not pay the "usual and customary value." Compl. ¶ 24. Rather, Defendant knew and understood that Plaintiff rendered such treatment with the expectation of being paid. *Id*. ¶ 21. Plaintiff alleges that by treating the patients and initiating contact with Defendant as described above, Plaintiff and Defendant entered into an implied-in-fact contract. *Id*. ¶ 25. To date, Defendant has not paid Plaintiff the full value of the services provided to Defendant's health plan beneficiaries.

Plaintiff subsequently filed a Complaint against Defendant in the Circuit Court of Cook County asserting claims for breach of implied-in-fact contract (Count I), and in the alternative, quantum meruit (Count II). R. 1, Notice of Removal ¶¶ 1, 13. In its Complaint, Plaintiff does not allege that any of the patients to whom it provided service were enrolled in either stand-alone Medicare or Medicaid plans or dual-eligible Medicare-Medicaid plans issued by Defendant. Nonetheless, Defendant removed the suit to federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1442(a)(1), also known as the Federal Officer

Removal Statute. *Id.* ¶ 10. Defendant now moves to dismiss Plaintiff's Complaint for failure to state a claim. Mot. Dismiss. For the reasons that follow, the Motion to Dismiss for failure to state a claim is denied in part and granted in part.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3D 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint needs only factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.    Subject Matter Jurisdiction

Before a court can address the merits of a dispute, it must first determine whether it has subject matter jurisdiction. *See Scott Air Force Base Properties, LLC v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 520 (7th Cir. 2008). Subject matter jurisdiction is the "first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). And although neither party raises the issue, "[i]t is the responsibility of a

court to make an independent evaluation of whether subject matter jurisdiction exists in every case." *Foster v. Hill*, 497 F.3d 695, 696–697 (7th Cir. 2007); *see also Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("Parties cannot confer subject-matter jurisdiction by agreement, and federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*.") (cleaned up).[3]

By statute, Congress grants federal courts jurisdiction over two types of cases: those that arise under federal law, 28 U.S.C. § 1331, and those where there is diversity of citizenship and an amount-in-controversy requirement is met under § 1332. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). A defendant may remove to federal court any action filed in state court that could have originally been filed in federal court. 28 U.S.C. § 1441(a).

In its Notice of Removal, Defendant asserts that there are three federal laws implicated in this case: (1) the Medicare Act, 42 U.S.C § § 1395w-21 through w-28, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Public Law 108-173, 117 Stat. 2066 (Dec. 8, 2003); (2) the Medicaid Act, 42 U.S.C. § 1396 *et seq.*; and (3) 28 U.S.C. § 1442(a)(1). Notice of Removal ¶¶ 11, 18. Defendant maintains that the Court has federal question jurisdiction over this case based on these three statutes. *Id*. Plaintiff did not file a motion to remand and has not objected to the Court's jurisdiction over this case. For the following reasons, the

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Court finds that it has jurisdiction over this case based on 28 U.S.C. § 1442(a)(1), and thus, will not analyze the other two statutes.

28 U.S.C. § 1442(a)(1) was passed by Congress to provide a federal forum for officers whose duties under federal law conflict with state law. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179 (7th Cir. 2012). The statute was created because of concerns "that unfriendly states will impose state-law liability on federal officers and their agents for actions done under the immediate direction of the national government." *Id*. (cleaned up). "Because the federal government can act only through its officers and agents, the removal statute promotes litigating federal defenses (like official immunity) in a federal forum so that the operations of the general government are not arrested at the will of one of the states." *Id*. (cleaned up). The statute allows "any officer . . . of the United States or . . . person acting under them to remove actions for or relating to any act under color of such office." *Id*. (citing 28 U.S.C. § 1442(a)(1)). "This requirement creates Article III jurisdiction . . . and it represents an exception to the well-pleaded complaint rule, which would ordinarily defeat jurisdiction when the federal question arises outside of the plaintiff's complaint." *Id*. Thus, "[u]nder the federal officer removal statute, a removing defendant must show that it is a (1) person (2) acting under the United States, its agencies, or its officers (3) that has been sued for or relating to any act under color of such office, and (4) has a colorable federal defense to the plaintiff's claim." *Woodruff v. Humana Pharmacy Inc.*, 65 F. Supp. 3d 588, 590 (N.D. Ill. 2014) (quoting 28 U.S.C. § 1442(a)).

Defendant maintains that it meets the first factor because it is a corporation, which constitutes a person for purposes of the statute. Notice of Removal ¶ 22 (citing *Body Mind Acupuncture v. Humana Health Plan Inc.*, 2017 WL 653270, at \*5 (N.D. W. Va. Feb. 16, 2017)). The Court agrees. *Ruppel*, 701 F.3d at 1181 ("The words person and whoever include corporations and companies as well as individuals") (cleaned up).

Defendant does not address the second factor, acting under the United States, its agencies, or its officers, as Defendant relies on a Ninth Circuit case that sets forth a three-pronged test omitting the second factor. Notice of Removal ¶ 21 (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). Nonetheless, the Court finds that Defendant meets the second factor. The Seventh Circuit has held that acting under the United States, its agencies, or its officers should be liberally construed. *Ruppel*, 701 F.3d at 1181. "Acting under must involve an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks," such as a defendant "working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Id.* (emphasis in original) (cleaned up). Under the Medicaid program, the United States Centers for Medicare and Medicaid Services (CMS) works with state agencies to determine rates of service for patients that qualify for Medicaid. *Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Illinois, Inc.*, 888 N.E.2d 694, 695–97 (2008). Illinois participates in the federal Medicaid program and contracts with insurers, like Defendant, to "underwrite and administer coverage for Medicaid enrollees" and ultimately "reimburse providers for

services rendered." *Id*. at 696–97; *see also Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001) (finding the Secretary of Health and Human Services administers the Medicare program through the Health Care Financing Administration (HCFA), which contracts with private contractors to pay hospitals and providers for covered services on behalf of eligible beneficiaries). Thus, Defendant was assisting the federal government in reimbursing Plaintiff for its treatment of qualifying Medicaid or Medicare patients. *See Woodruff*, 65 F. Supp. 3d at 590–91 (finding that Humana, a private insurer, that contracts with CMS to administer Medicare's prescription drug benefits acted under the authority of a federal officer).

As to the third factor, being sued for or relating to any act under color of such office, Defendant argues that Plaintiff's claims concern "actions such as coverage and benefits determinations that were taken under the direction of CMS." Notice of Removal ¶ 23. The Court agrees. This factor requires that Plaintiff's claim occur while Defendant "acted under color of federal authority." *Ruppel*, 701 F.3d at 1181. As discussed above, pursuant to the Medicaid Act and the contracts between the State and CMS, Defendant provided reimbursement coverage to the patients that Plaintiff claims it was not properly reimbursed for treating. Thus, Plaintiff seeks payment from Defendant for claims that arose while Defendant acted under color of federal authority.

In addressing the final factor, Defendant maintains that it has colorable federal defenses because Plaintiff's claims are preempted by the Medicare and Medicaid Act, subject to the Medicare Act's exhaustion requirements, and brought

against the wrong party under the Medicaid Act. Notice of Removal ¶ 24. The Court agrees. A federal defense "need only be plausible." *Ruppel*, 701 F.3d at 1182 (cleaned up). The Seventh Circuit has held that "[a]t this point, we are concerned with who makes the ultimate determination, not what that determination will be." *Id*. "If defendants had to virtually win their case before they can have it removed, we would leave nothing for the eventual trial court to decide." *Id.* (cleaned up). Here, Defendant raises a preemption argument premised on both Medicaid and Medicare. Notice of Removal ¶ 24; R. 14, Memo. Dismiss at 4–10. Plaintiff brings a claim for breach of implied-in-fact contract, and in the alternative, quantum meruit, alleging it was not properly paid its usual and customary amount for the medically necessary services rendered it rendered. Compl. ¶¶ 29, 36, 50. Courts have held that Medicare Act preemption is very broad. *Mayberry v. Walgreens, Co.*, 2017 WL 4228205, at *2 (N.D. Ill. Sept. 21, 2017).

In support of its Notice of Removal and subsequently its Motion to Dismiss, Defendant submitted two declarations of Keive Dixon, a Manager of Services Operation for Aetna Better Health of Illinois. R. 1-3, Dixon Remov. Decl.; R. 13-1, Dixon Dismiss Decl. The Court may consider the declarations to determine whether it has subject matter jurisdiction. *See Porch-Clark v. Engelhart*, 930 F. Supp. 2d 928, 933 (N.D. Ill. 2013), *aff'd* (Dec. 10, 2013). In his Declarations, Dixon attests that the members identified in Exhibit A to the Complaint were enrolled in either stand-alone Medicaid plans or dual-eligible Medicare-Medicaid plans issued by either Illinicare or Aetna Better Health of Illinois during the timeframe alleged in the Complaint.

Dixon Remov. Decl. ¶¶ 3, 4; Dixon Dismiss Decl. ¶¶ 3–4. Thus, because certain patients are covered by Medicare and Defendant's federal defense need only be plausible, the Court finds that Defendant has sufficiently met this factor. As such, the Court finds that it has subject matter jurisdiction under 28 U.S.C. § 1442(a)(1). Therefore, the Court now turns to Defendant's arguments for dismissal.

## II.    Exhibits to the Briefs

Before addressing the substance of Defendant's motion, however, the Court must determine whether it can consider, in deciding the Motion to Dismiss, Dixon's declaration and the three-way Medicare-Medicaid agreement between CMS, Department of Healthcare and Family Services (HFS), and Defendant, submitted by Defendant in support of its Motion to Dismiss, as well as the declaration of Michael Mullen attached to Plaintiff's Response. "Under Federal Rule of Civil Procedure 12(d), a district court may not normally consider matters outside the pleadings without converting a Rule 12(b)(6) to a summary judgment motion under Rule 56." *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 766 (N.D. Ill. 2015) (cleaned up). "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss *if they are referred to in the plaintiff's complaint and are central to this claim.*" *Id*. (emphasis in original) (cleaned up). "The Seventh Circuit has stressed that this is a narrow exception and not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id*. at 766–67 (cleaned up).

Here, because the documents the parties include in their memoranda are not referred to in the Complaint, the Court declines to consider them. *See AAA Gaming LLC v. Midwest Elecs. Gaming, LLC*, 2018 WL 572508, at *1 (N.D. Ill. Jan. 26, 2018) ("With a 12(b)(6) motion, a court may consider only allegations in the complaint, documents attached to the complaint, and documents that are *both* referred to in the complaint and central to its claims.") (emphasis added). Having made its determination on the extraneous documents not included with the pleadings, the Court now turns to Defendant's preemption argument.

### III. Medicare Act Preemption

Plaintiff asserts claims for breach of implied-in-fact contract, and in the alternative, quantum meruit, seeking $4,397,310.13. Compl. ¶¶ 20–55. Defendant argues that the Medicare Act expressly preempts Plaintiff's common law claims based on services provided to individuals enrolled in Medicare-Medicaid Plans. Memo. Dismiss at 8 (citing *Mayberry,* 2017 WL 4228205, at *2; *Rudek v. Presence*, 2014 WL 5441845 (N.D. Ill. Oct. 27, 2014); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480 (7th Cir. 1990)).

"Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 et seq., commonly known as the Medicare Act, establishes a federally subsidized health insurance program. . . ." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984). This program provides coverage for "persons who (1) are 65 or older and entitled to social security retirement benefits; (2) are disabled and entitled to social security disability benefits; or (3) have end stage renal (kidney) disease." *Wood*, 246 F.3d at

11

1029. "The Secretary of Health and Human Services administers the Medicare program through the Health Care Financing Administration (HCFA), which enters into agreements with private contractors to administer payments of funds to hospitals and providers for covered services on behalf of eligible beneficiaries." *Id*.

The Medicare Act provides that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3). As Defendant argues, "the scope of Medicare Act preemption is very broad." *Mayberry*, 2017 WL 4228205, at *2 (cleaned up); Memo. Dismiss at 8. "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *520 S. Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1125 (7th Cir. 2008) (cleaned up).

Plaintiff does not oppose Defendant's Medicare Act preemption argument with regard to two patients. R. 17, Resp. at 8–9. Neither Defendant nor the Complaint specify which patients are enrolled in Medicare-Medicaid Plans.[4] Memo. Dismiss at 7–9. Even so, Plaintiff voluntarily dismisses patients identified in the Complaint and Exhibit A thereto as patient row number 15, with initials K.C., with dates of service from October 6, 2019, to October 7, 2019, and patient row 52, with initials C.W., with dates of service from May 4, 2018, through May 14, 2018. Resp. at 8–9. In Reply,

---

[4]As previously stated, *see supra* Section II, Plaintiff included a declaration with its Response that distinguishes which patients are enrolled in Medicare-Medicaid Plans. For the reasons indicated above, the Court will not consider documents not included in the pleadings.

Defendant acknowledges Plaintiff's voluntary dismissal of the two patients, but fails to make any argument concerning dismissing Plaintiff's claims related to the remaining patients based on preemption under the Medicare Act. R. 18, Reply at 7. In light of Defendant's silence concerning all of Plaintiff's claims outside of the two voluntarily dismissed patients, the Court need not address the Medicare Act preemption argument as to the remaining patients. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Defendant in its Motion also asserts that Plaintiff cannot plead exhaustion of the Medicare Act's appeal process; however, Defendant also fails to make any exhaustion argument in Reply concerning the remaining patients after Plaintiff's voluntary dismissal. Thus, because of the Court's inability to distinguish which patients are enrolled in Medicare-Medicaid plans and Defendant's silence concerning the remaining patients, the Court also finds there is no need to address Defendant's exhaustion argument. *Id*. Accordingly, the Court grants Defendant's Motion to Dismiss as to Plaintiff's claims involving reimbursement for the two patients that Plaintiff voluntarily dismisses. The Court turns now to Defendant's Medicaid argument.

## IV.  Medicaid Act Bar

Defendant contends that Plaintiff's claims for additional reimbursement are barred by Medicaid because Medicaid sets the rates for service. Memo. Dismiss at 4

(citing *Midwest Emergency Assocs. Elgin Ltd.*, 888 N.E.2d at 694). Plaintiff retorts that it is due the reasonable value of the services provided, and it is a material question of fact, properly resolved at summary judgment, whether Plaintiff's usual and customary charges are what Medicaid would pay for such services and whether Defendant paid the proper amount for such services. Resp. at 8. Because neither party has provided the rates for service, the Court agrees with Plaintiff that Medicaid does not bar its claims at this stage.

Medicaid, 42 U.S.C. § 1396 *et seq.*, "allows states to provide federally subsidized medical assistance to low-income individuals and families." *Bontrager v. Indiana Fam. & Soc. Servs. Admin.*, 697 F.3d 604, 605 (7th Cir. 2012). "Although participation in Medicaid is optional, once a state has chosen to take part it must comply with all federal statutory and regulatory requirements." *Id.* (cleaned up). In Illinois, HFS administers its Medicaid program. *Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 499 (7th Cir. 2022). A state can either pay providers for the services provided to covered Medicaid patients through fee-for-service or managed care. *Id.* "In a fee-for-service program, the state pays providers directly based on a set fee for a particular service." *Id.* In contrast, in managed care "HFS contracts with [Managed Care Organizations (MCOs)] (which are private health insurance companies) to deliver Medicaid health benefits to beneficiaries." *Id.* "In recent years, Illinois has changed from a fee-for-service system to a system dominated by managed care." *Id.*

Defendant asserts that it entered into (1) an agreement with the State in which it agreed to comply with all rules and regulations governing the Medicaid program,

and (2) network agreements with affiliated healthcare providers that, *inter alia*, set an agreed-upon price for medical services. Memo. Dismiss at 5. Defendant additionally argues that, although Plaintiff is a non-affiliated provider, it must still abide by Medicaid regulations, file with HFS an agreement for participation in the Illinois medical assistant program and "accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." *Id.* at 6 (citing 42 C.F.R. § 447.15; 89 Ill. Admin. Code § 140.12(i)). Further, Defendant contends that HFS requires Defendant to pay non-affiliated providers like Plaintiff nothing more than the same rate HFS would pay for such services, unless a different rate was agreed upon. *Id.* (citing *Midwest Emergency Assocs. Elgin Ltd.*, 888 N.E.2d at 697). Plaintiff does not dispute Defendant's argument concerning service rates set by HFS. Resp. at 7–8. Instead, Plaintiff argues that Defendant has failed to establish that Defendant already paid Plaintiff at the rates HFS would pay for such services. *Id.*

Here, the Complaint alleges that Defendant only paid $537,579.69 on a $4,928,889.82 invoice, resulting in an aggregate underpayment of $4,397,310.13 Compl. ¶¶ 15, 29. Plaintiff alleges that the invoiced amount was the usual and customary value of those services. *Id.* ¶ 50. Because neither Plaintiff nor Defendant provide what the proper service fees under the HFS rates would be, the Court is unable to determine, as Defendant urges, that the amount paid by Defendant was proper.

15

Additionally, Plaintiff argues, and the Court agrees, that *Midwest Emergency Assocs. Elgin Ltd.*, relied on by Defendant, is distinguishable from this case because there, the court was able to review the agreements between the provider, MCO, and HFS. In that case, plaintiff (Midwest), a non-affiliated medical care provider, filed suit against Harmony Health, a Medicaid managed care plan, to recover the full billed amount for emergency medical services that it provided to Medicaid beneficiaries enrolled in Harmony Health's managed care plans. *Midwest Emergency Assocs. Elgin Ltd.*, 888 N.E.2d at 694. The Illinois Appellate Court affirmed the trial court's dismissal of Midwest's quantum meruit and unjust enrichment claims because they were barred by HFS provider agreements and Harmony Health's MCO agreements. *Id.* at 702. The Illinois Appellate Court found that "HFS provider agreements are the legal instruments that create any right on the part of emergency healthcare providers to seek reimbursement from an MCO when such providers are not part of the MCO's network; likewise, MCO agreements with HFS are the legal instrument that create any obligation on the part of MCOs to reimburse non-network-affiliated emergency healthcare providers that treat one of the MCO's Medicaid enrollees[, thus w]e look at those agreements in tandem to determine the scope of the MCO's obligation in emergency care situations." *Id.* at 700. In this case, the HFS agreement is not attached to the Complaint, nor is it even referenced in the Complaint. In short, there is nothing in the Complaint alleging what the proper rates for reimbursement are. Thus, at this juncture in the litigation, construing the allegations in the Complaint in the light most favorable to Plaintiff, as it must, the Court finds that Plaintiff has

sufficiently alleged that it was not properly paid the HFS rate, and therefore, Plaintiffs' claims are not barred by Medicaid.

## V.     Failure to Exhaust Administrative Remedies

In the alternative, Defendant argues that Plaintiff's claims should be dismissed for failure to exhaust its administrative remedies. Memo. Dismiss at 7. In Response, Plaintiff maintains that exhaustion of administrative remedies is inapplicable here. Resp. at 8. The Court agrees with Plaintiff.

First, Defendant asserts that both federal and state law have an administrative remedy to address disputes between providers and MCOs like Defendant. Memo. Dismiss at 7. In support, Defendant cites 42 C.F.R. § 431.1(E), 42 C.F.R. § 438(F), 215 Ill. Comp. Stat. § 134, and the HFS-Illinicare Contract. In Response, Plaintiff argues that both 42 C.F.R. § 431.1(E) and 42 C.F.R. § 438(F) are inapplicable because these provisions create appeal "requirements when providers act on behalf of enrollees, which is not the case here as Northwestern is bringing a separate and distinct causes of action for the direct relationship between Northwestern and Defendant." Resp. at 8. Plaintiff also argues that 215 Ill. Comp. Stat. § 134 is both elective and a reference for when providers act on an enrollee's behalf. *Id.* Defendant fails to address Plaintiff's arguments in their Reply. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.") Additionally, Defendant does not cite any cases to support their argument that 42 C.F.R. § 431.1(E), 42 C.F.R. § 438(F), or 215 Ill. Comp. Stat. § 134 require exhaustion of administrative remedies. As provided above,

the Court declines to address Defendant's argument concerning a contract because Plaintiff did not include a contract in its pleadings. As such, the Court is unpersuaded by Defendant's argument.

Second, Defendant contends that 89 Ill. Admin. Code § 140.75 requires Plaintiff to submit issues, such as a MCO's reimbursement to a provider for services, through the State's Disputed Provider Claims Resolution Process. Reply at 7 Specifically, Defendant argues that the statute "makes clear that a provider must first exhaust the MCO's 'internal provider dispute resolution process.'" *Id.* (quoting 89 Ill. Admin. Code § 140.75(b)). If that fails, Defendant argues, Illinois' Disputed Provider Resolution Process provides the framework through which a disputed claim between a provider and a MCO is resolved. *Id.* (citing 89 Ill. Admin. Code § 140.75(a)). Plaintiff, however, maintains that this provision is elective. Resp. at 8. The Court agrees with Plaintiff. The Disputed Provider Claims Resolution Process, 89 Ill. Admin. Code § 140.75, provides in pertinent part:

> (a) The Department will maintain an electronic provider complaint portal through which a disputed claim between a provider and an MCO is documented, monitored, and resolved. A disputed claim is a determination made by an MCO that denies in whole or in part a claim for reimbursement to a provider for services rendered by the provider to an enrollee of the MCO with which the provider disagrees.
> (b) A provider or its billing agent may submit to the Department's provider complaint portal a disputed claim only after filing with the MCO's internal provider dispute resolution process, as described in this subsection (b). Multiple claim disputes involving the same MCO may be submitted in one complaint, regardless of whether the claims are for different enrollees, when the specific reason for nonpayment of the claims involves a common question of fact or policy.

89 Ill. Admin. Code § 140.75.

Here, as argued by Plaintiff, section 140.75(b) provides a "provider or its billing agent *may* submit to the Department's provider complaint portal a disputed claim only after filing with the MCO's internal provider dispute resolution process, as described in this subsection." 89 Ill. Admin. Code § 140.75(b) (emphasis added). This does not indicate that Plaintiff was required to submit a complaint to the Department prior to initiating this case. *See Sigler v. GEICO Cas. Co.*, 967 F.3d 658, 661 (7th Cir. 2020) ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive . . . .") (quoting Antonin Scalia & Bryan A. Garner, READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS 112 (2012)) (emphasis in original); *see also Burger v. Spark Energy Gas, LLC*, 507 F. Supp. 3d 982, 990 (N.D. Ill. 2020) (collecting cases finding that the use of "may" in a contract gives a party discretion but does not mandate the party to do something). Further, Defendant fails to cite any law to the contrary. Accordingly, Defendant's argument is unavailing. The Court turns now to Defendant's argument that Plaintiff fails to state a claim for breach of implied-in-fact contract.

## VI.    Failure to State a Cause of Action

### A. Breach of Implied-in-Fact Contract

As stated above, in Count I, Plaintiff alleges a claim for breach of implied-in-fact contract alleging that, before treating the patients included in the Complaint, through industry custom and practice, "Defendant impliedly agreed, promissorily impliedly expressed and understood" that Plaintiff would provide medically necessary care to Defendant's beneficiaries and that Defendant would pay the usual

and customary value to Plaintiff for the medical treatment. Compl. ¶ 22. Defendant argues that Plaintiff has failed to adequately allege the elements of a breach of implied-in-fact contract claim; specifically, that Plaintiff has failed to properly allege a meeting of the minds, an offer, acceptance, or clear and definite terms. Memo. Dismiss at 11. The Court agrees with Plaintiff that it has adequately pled its breach of implied-in-fact contract claim at this stage.

In Illinois, "[a]n implied-in-fact contract must contain all the elements of an express contract, but unlike an express contract or other contracts, its terms are inferred from the conduct of the parties." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022). Thus, an implied in fact contract must contain an "offer, acceptance, and consideration—as well as a meeting of the minds." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 531 (N.D. Ill. 2011).

First, Defendant argues that Plaintiff fails to allege a meeting of the minds. Memo. Dismiss at 11. "Whether there was a meeting of the minds depends on the parties' objective conduct, not their subjective beliefs." *Howard v. Proviso Twp. High Sch. Bd. Of Educ.*, 2023 WL 358796, at *2 (N.D. Ill. Jan. 23, 2023) (cleaned up). Plaintiff maintains that it sufficiently alleged Defendant's objective conduct when it alleged "a) [Plaintiff] received authorization for treatment from Defendant; b) Defendant approved the admission of Patients; c) Defendant paid some portion, but not full and proper reasonable value of the claims; [and] d) Defendant received premium payments for the patient's enrollment and coverage in Defendant's respective health plans . . . ." Resp. at 9–10 (citing Compl. ¶¶ 11–12, 17–18). In Reply,

Defendant argues that pre-treatment verifications or authorizations do not constitute an agreement to pay Plaintiff's usual and customary charges. Reply at 11–12 (citing, among other cases, *Advanced Ambulatory Surgical Ctr., Inc. v. Connecticut Gen. Life Ins. Co.*, 261 F. Supp. 3d 889, 896 (N.D. Ill. 2017); *Connecticut Gen. Life Ins. Co. v. Sw. Surgery Ctr., LLC*, 349 F. Supp. 3d 718, 726 (N.D. Ill. 2018) (Plaintiff "conflates verification of eligibility and benefits with promise of payment. Courts have held that a mere verification of coverage and benefits is insufficient to constitute an unambiguous promise of payment.")). The Court finds that Plaintiff has the better of the arguments.

Here, Plaintiff has sufficiently alleged a meeting of the minds. Even if verification of eligibility on its own is insufficient to constitute an agreement, as argued by Plaintiff, Plaintiff has also alleged that it received authorization for treatment from Defendant and Defendant approved the admission of the patients. *See* Compl. ¶¶ 13, 23. These actions by the parties indicate a meeting of the minds. Further, Defendant's cited cases do not support its argument. As an initial matter, both cases involve examining evidence and not allegations because they were decided on summary judgment. Additionally, both cases involve instances where there were no allegations that the insurer authorized and approved treatment. *See Advanced Ambulatory Surgical Ctr.*, 261 F. Supp. 3d at 896 ("[T]he salient question here is whether a Cigna agent, purely by verifying the plan benefits of an AASC patient, made an unambiguous promise to reimburse AASC at the stated percentage of its charges."); *Connecticut Gen. Life Ins. Co.*, 349 F. Supp. 3d at 726 (finding no

promissory estoppel claim because "the record is devoid of any evidence that Cigna made any unambiguous promises to pay CMIS' billed charges").

Next, Defendant contends that Plaintiff does not allege the existence of consideration because the only benefit that Plaintiff alleges in the Complaint is the provision of medical services, which flows to patients, not Defendant. Memo. Dismiss at 13. Plaintiff responds that it properly alleged consideration by, among other things, alleging Defendant failed to fully pay Plaintiff for its services, which was a detriment to Plaintiff. Resp. at 12 (citing *Doyle v. Holy Cross Hosp.*, 708 N.E.2d 1140, 1145 (Ill. 1999) ("Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them.")). Defendant responds only to Plaintiff's consideration argument premised on a benefit, but fails to respond to Plaintiff's argument premised on a detriment. Reply at 12. Defendant has therefore waived its argument and the Court agrees with Plaintiff at this stage that it has adequately alleged the consideration element. *See Bonte*, 624 F.3d at 466. Additionally, although Defendant states that Plaintiff has failed to allege an offer or definite terms, Defendant fails to make any arguments to support its statements. Thus, Defendant has failed to develop its arguments. *See Schaefer*, 839 F.3d at 607. As, such the Court finds that Plaintiff has sufficiently alleged a claim for breach of implied-in-fact contract. The Court turns to Defendant's arguments concerning quantum meruit.

### B. Quantum Meruit

In the alternative, Plaintiff asserts a claim for quantum meruit, alleging that it provided emergency care to the patients, and thus, Defendant was provided a benefit but failed to properly compensate Plaintiff for its services. Compl. ¶¶ 35, 40. Defendant contends that Plaintiff has not sufficiently alleged a claim for quantum meruit. Predictably, Plaintiff disagrees. Resp. at 13. The Court agrees with Plaintiff that it has sufficiently stated its claim at this stage.

"Quantum meruit is a quasi-contract theory that compensates plaintiffs for acts of unjust enrichment where one party receives services without giving compensation." *Strategic Reimbursement, Inc.*, 2007 WL 2274709, at *4 (N.D. Ill. Aug. 2, 2007). "In order to state a claim for quantum meruit, Plaintiff must allege that: (1) it performed a service to benefit the Defendant; (2) Plaintiff performed the service non-gratuitously; (3) Defendant accepted the service; and (4) no contract existed to prescribe payment of this service." *JMR Sales, Inc. v. MMC Elecs. Am., Inc.*, 2002 WL 31269612, at *1 (N.D. Ill. Oct. 10, 2002) (cleaned up).

First, Defendant argues that Plaintiff fails to allege that it rendered a benefit to Defendant because the only benefit Plaintiff alleges was medical services to the patients, which naturally benefits only those patients. Memo. Dismiss at 14. Plaintiff, however, contends that by providing service to Defendant's beneficiaries, Defendant benefited because it was able to fulfill its obligation to secure medically necessary healthcare for its beneficiaries in exchange for the premiums charged to the patients. Resp. at 14. The Court agrees.

Defendant cites multiple inapplicable cases to support its argument. Defendant first cites *Roche v. Travelers Prop. Cas. Ins. Co.*, 2009 WL 839310, at *2 (S.D. Ill. Mar. 31, 2009) and *Bemis v. Emp'rs Mut. Cas. Co.*, 36 N.E.3d 878, 891–92 (Ill. App. Ct. 2015). However, *Roche* and *Bemis* both involve unjust enrichment worker's compensation claims in which the courts found that the plaintiff had "not alleged any facts from which the inference could be drawn that [the insurer] was obligated to pay her bill" and "to the extent that Roche is alleging that TIC must pay the reasonable costs of the treatment of her patient because the patient sustained a work-related injury, any such cause of action is precluded by the Worker's Compensation Act." *Roche*, 2009 WL 839310, at *2. This case is neither a worker's compensation case nor does it lack allegations from which the inference could be drawn that Defendant was obligated to pay Plaintiff's bill. As described above, Plaintiff alleges that it communicated with Defendant and received authorization to treat the patients. Further, Defendant actually paid part of Plaintiff's invoice. As such, the Court is unpersuaded by Defendant's argument.

Second, Defendant asserts that Plaintiff has not alleged that Defendant voluntarily accepted the benefits. Memo. Dismiss at 14. Plaintiff responds by arguing that, among other things, Defendant instructed the patients to provide insurance cards to Plaintiff, and authorized and approved admission of the services to be performed. Resp. at 14. Defendant fails to respond to Plaintiff's argument. Accordingly, the Court agrees with Plaintiff at this stage.

24

Third, Defendant contends that Plaintiff fails to allege that no contract existed to prescribe payment for this service. Memo. Dismiss at 15. Plaintiff retorts that the Medicare and Medicaid agreements and regulations do not apply and do not set the terms of payment. Resp. at 14. Defendant fails to respond to Plaintiff's argument and thus waives it. *Bonte*, 624 F.3d at 466. Further, a review of the Complaint shows that Plaintiff alleges that "[n]o express written contract between ILLINICARE and [Plaintiff] existed to prescribe payment for the medically necessary services, supplies, and/or equipment rendered to patients . . . ." Compl. ¶ 21. Thus, because Defendant did not respond to Plaintiff's argument, and accepting Plaintiff's well-pled facts in the Complaint and drawing all reasonable inferences in favor of Plaintiff, the Court finds that at this juncture Plaintiff has sufficiently alleged that no contract for payment existed. Defendant is free to raise this argument again at summary judgment.

Lastly, Defendant argues that allowing Plaintiff's claim to proceed would severely undermine the Medicaid and Medicare regimes that covered these patients because it is being weaponized to undermine an entire statutory regime designed to control healthcare costs. Memo. Dismiss at 15. Plaintiff counters that it is only seeking to be made whole and be fairly compensated the reasonable value of the services it provided. Resp. at 15. The Court finds Defendant's argument unavailing. As provided above, Plaintiff does not dispute the rates established by Medicaid, but alleges that it was not properly compensated. Thus, Plaintiff is not seeking compensation that would contradict the rates established by Medicaid. As such, the

Court finds that Plaintiff has sufficiently alleged a claim for quantum meruit in the alternative.

## Conclusion

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss [13] in part and denies it in part. The Court grants dismissal of Plaintiff's claims under Medicare but denies Defendant's motion as to the remaining claims.

Dated: March 31, 2023

United States District Judge
Franklin U. Valderrama

26